UNION RAILWAY COMPANY

*v.*

Z. D. ATKINS, Commissioner of Finance and Taxation, etc.

(*Nashville,* December Term, 1958.)

Opinion filed January 23, 1959.

COOPER TURNER, JR., and JAMES W. MCDONNELL, JR., Memphis, for appellant (complainant).

GEORGE F. McCANLESS, Attorney General, ALLISON B. HUMPHREYS, Solicitor General, MILTON P. RICE, Assistant Attorney General, for appellee (defendant).

MR. CHIEF JUSTICE NEIL delivered the opinion of the Court.

This appeal involves the alleged unlawful exaction of a privilege tax by the Commissioner of Finance and Taxation, the said tax having been paid under protest and suit filed in the Chancery Court to recover it. The amount of the refund is claimed to be $1,703.54 together with interest thereon from September 5, 1956.

The cause was heard by the Chancellor on bill and answer with a stipulation of facts. The question presented for consideration involves the meaning of Item T, Section 67-4102, T.C.A. The Chancellor held that the tax paid

was lawfully assessed and collected and dismissed the complainant's bill. An appeal was prayed and granted to this Court. The assignments of error, later to be referred to, complain that the Chancellor erred in construing the aforesaid Section of the Code, in disallowing certain credits which the statute authorized to be made to taxes paid upon the amount of gross receipts ''on the business of operating a transportation company'' etc.

The applicable Section of the Code reads, as follows:

*"Item T. Transportation companies and compensation for use of public highways.*—(a) Transportation Companies.—Each person engaged in the business of operating a transportation company shall, for the privilege of doing such business, pay to the state for state purposes an amount equal to three per cent (3%) of the gross receipts derived from intrastate business in this state.''

Immediately following the above wherein a privilege tax is levied upon ''transportation companies'' the statute specifically recites that it includes any person operating a railroad employed in the business of transporting ''persons or property or freight for hire''. There are numerous and sundry transfer companies authorized to be taxed under the foregoing Section according to maximum gross weight, etc. There is this further provision in the Code:

''When transportation companies are operating partly within and partly without this state, the gross receipts shall be deemed to be all receipts on business beginning and ending within this state, without entering or passing through any other state. It is the intention

of this Item to levy a tax for the privilege of engaging in intrastate commerce carried on wholly within the state and not a part of interstate commerce. * * *

"There shall be credited upon the tax hereby imposed any taxes paid on the business of operating a transportation company as defined by this Item under the Franchise Tax Law and under the Excise Tax Law during the calendar year in which the tax hereby levied becomes due.

"The tax hereby imposed shall be administered and collected in accordance with secs. 67-4315—67-4323."

The foregoing Section of the Code is applicable to the complainant, who is admittedly engaged in the business of transportation of freight within the confines of the City of Memphis.

The complainant is a "belt-line" railroad doing business as a transportation system carrying freight from point to point both in interstate and intrastate commerce. But the tax imposed in the case at bar is for the privilege of carrying on a business engaged in intrastate transportation.

The entire controversy involves the meaning of this Section of the Code. Complainant filed its report as to the amount of gross receipts for the years now under investigation and claimed credits which the Commissioner disallowed. The Chancellor in a memorandum opinion (Tr. p. 32) held as follows:

"Item T provided for the 3% gross receipts tax 'derived from intrastate business in this state,' and further provided for the credit of the Franchise and Ex-

cise Tax 'on the business of operating a transportation company as defined by this item.'

"Item T further provided that the tax was a privilege tax for 'engaging in intrastate commerce carried on wholly within the State and not a part of interstate commerce.'

"This Court is of the further opinion that the Legislative intent was, as is stated in the defendant's brief on page 7:

" 'Their quite obvious aim was to lay a special tax upon carriers, measured by their gross receipts, but to permit them to reduce the amount of this tax by whatever they paid in corporate franchise and excise taxes accruing on account of the identical activity. In other words, the legislative purpose was to insure that the State would receive from those in the transportation business at least an amount equivalent to 3% of the gross receipts derived from intrastate business, but not to burden corporations with the full amount of two privilege taxes arising out of the same operation.'

"This Court, therefore, feels that any Franchise and Excise Taxes paid on interstate or any other and different operation cannot be credited against the gross receipts tax."

The Chancellor thus sustained the ruling of the Commissioner. There are four assignments of error, but collectively they complain that the Chancellor was in error in his interpretation of the meaning of the statute and also in considering the legislative intent in its adoption. To be more specific it is urged upon us:

(1) The Chancellor erred in holding that any franchise and excise taxes paid on the interstate operation of complainant could not be credited against the gross receipts tax by the State of Tennessee against the complainant.

(2) The Chancellor erred in speculating upon the legislative intent in his interpretation of Item T 67-4102, T.C.A.

Assignments 2 and 3 complain that the Chancellor erred in sustaining the ruling of the Commissioner and that he should have sustained the complainant's bill because it was entitled to the credits so denied.

■ We feel that it was not improper to consider the legislative intent in passing this statute although it was later repealed. It is fundamental that the State cannot constitutionally tax any business that involves interstate transactions. In the instant case this principle is adhered to, and also avoids double taxation.

■ The complainant undertook in the case at bar "to credit against its gross receipts taxes, based upon its receipts from intrastate transportation only, excise taxes paid by it with respect to its net income from its entire corporate operation." The statute does not contemplate granting such relief. We think that the credits to be allowed upon franchise and excise taxes relate entirely to the business of operating a railroad transportation system in *intrastate commerce.*

■ We must consider the Code Section that is applicable to this case as a whole (and it applies to any number of different carriers, including the complainant). It is insisted by complainant's counsel that the statute must be construed strictly and in favor of the taxpayer. While

on the other hand, the State insists that since it is an "exemption from taxation" it must be construed against the taxpayer. Cases are cited to support both contentions. The issue cannot be thus technically resolved. The whole purpose of this statute was to avoid double taxation, and it must be so construed.

In giving consideration to other Sections of the Code relating to taxation of corporations, and especially railroads engaged in both interstate and intrastate business (Secs. 67-2701, 67-2709, T.C.A.) there is manifested an expressed intent not to impose any tax upon interstate shipments. We think the Commissioner of Finance and Taxation's formula as applied to 67-4102 is reasonable in all respects.

We have given full consideration to the earnest insistence of complainant's counsel, and the cases cited in support thereof, but they do not justify us in disagreeing with the Commissioner's interpretation of the statute.

The assignments of error are overruled, and the Chancellor's decree is affirmed.